UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THE ESTATE OF MICHAEL HEISER, *et. al.*,

    Petitioners,

v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

    Respondents.

-----------------------------------------------------------------x

Case Nos.: 18-Misc-302
10-Misc-0005

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF SEVENTH *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1610(c) FOR ISSUANCE OF WRIT OF EXECUTION**

## INTRODUCTION

Petitioners are the family members and personal representatives of the estates of the United States Air Force personnel who were victims of the 1996 terrorist bombing of the Khobar Towers in Saudi Arabia. By this Application, the Petitioners seek an order under 28 U.S.C. § 1610(c), directing the Clerk of the Court to issue writs of execution with respect to certain property in which the Islamic Republic of Iran, the Iranian Ministry of Information & Security ("MOIS"), and the Iranian Revolutionary Guard Corps ("IRGC"), and/or any agencies or instrumentalities thereof (collectively, "Iran") have an interest, as more particularly described herein. The Petitioners seek to execute upon assets in which Iran has a beneficial interest, namely, the blocked and restrained assets of Iran consisting of 62 bond proceeds payments totaling $1.68 billon (the "Blocked Assets") held by (1) Clearstream Banking S.A., a Luxembourg banking corporation ("Clearstream"), (2) Banca UBAE, SpA, an Italian banking corporation ("Banca UBAE"), (3) JPMorgan Chase Bank, N.A. a United States banking association ("JPMorgan"), and (4) Central Bank of Iran, a/k/a Bank Markazi ("Bank Markazi" and together with Clearstream, Banca UBAE, and JPMorgan, the "Banks"). Three cases are

pending in this Court against the Banks relating to the Blocked Assets that show Iran has an interest in the Blocked Assets and that the Blocked Assets may be available to satisfy the Judgment (as defined herein). *See Levin et al. v. Clearstream Banking S.A. et al.*, Case No. 1:18-cv-12217 (LAP); *Peterson et al. v. Islamic Republic of Iran, et al.*, Case No. 13-cv-9195 (LAP), and *Havlish et al. v. Clearstream Banking S.A. et al.*, Case No. 16-cv-8075 (LAP). These Blocked Assets may be located in this jurisdiction[1] and they are not immune from execution by virtue of 28 U.S.C. § 1610 and section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), codified at 28 U.S.C. § 1610 note ("TRIA").

The Petitioners also obtained orders from the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1610(c) in 2008 and 2010, finding that a reasonable period of time had elapsed following the entry of the Judgment and authorizing the Petitioners to pursue attachment in aid of execution and execution.

In addition, this Court has previously granted nearly identical relief to the relief requested herein. On August 25, 2011, May 24, 2012, May 28, 2013,[2] November 17, 2017, and April 25, 2018, this Court entered orders pursuant to 28 U.S.C. § 1610(c) finding that a reasonable period of time has elapsed following the entry of judgment against Iran and that the Petitioners had properly served Iran in accordance with 28 U.S.C. § 1608, *et seq* (collectively the "Heiser 1610(c) Orders"). *See* Order Granting *Ex Parte* Application Pursuant to 28 U.S.C. § 1610(c), (August 6, 2019 Robert C. Santoro Declaration ("Santoro Decl.") Ex. 7) and Order Granting Second *Ex Parte* Application Pursuant to 28 U.S.C. § 1610(c), (Santoro Decl. Ex. 8).

---

[1] The location of the Blocked Assets has been subject to vigorous litigation in *Peterson et al. v. Islamic Republic of Iran, et al.*, Case No. 13-cv-9195 (LAP).

[2] The May 28, 2013 order, November 17, 2017 order, and April 25, 2018 order are filed under seal.

## FACTUAL BACKGROUND

1.      The Petitioners are judgment creditors who hold a total unsatisfied judgment pursuant to 28 U.S.C. § 1605A, in excess of $500,000,000, plus post-judgment interest at the legal rate, against Iran. *See* Order & Judgment at Santoro Decl. Ex. 1; Order & Judgment at Santoro Decl. Ex. 4. *See also* Heiser 1610(c) Orders ¶¶ 1-3 at Santoro Decl. Exs. 7-8.

2.      The judgment is comprised of two parts: (1) a judgment dated December 22, 2006 in the amount of $254,431,903.00 (the "December 2006 Judgment") and (2) a supplemental judgment dated September 30, 2009, in the amount of $336,658,063.00 (the "September 2009 Judgment") (together, the "Judgment"). *See* Santoro Decl. Exs. 1 & 4.

3.      On January 13, 2009, the United States District Court for the District of Columbia issued an order holding that 28 U.S.C. § 1605A applies to the Judgment. *See* Santoro Decl. Ex. 3.

4.      Pursuant to 28 U.S.C. § 1608(a), the Petitioners delivered copies of the memorandum opinion, order of judgment, and notice of default judgment which, together, comprised the December 2006 Judgment – each of which had been translated into *Farsi* – and a copy of the FSIA to the United States Department of State to initiate service of process of the judgment upon Iran, MOIS, and IRGC through the required diplomatic channels. The United States Department of State transmitted this paperwork to the United States Embassy in Bern, Switzerland which in turn transmitted the paperwork to the Swiss Foreign Ministry. The paperwork was thereafter served upon the Iranian Ministry of Foreign Affairs along with the Swiss Embassy's diplomatic note nos. 1106-IE, 1107-IE, and 1108-IE on July 30, 2007. Accordingly, service of process of the judgment was achieved through the diplomatic channels, and the December 2006 Judgment became final on July 30, 2007.

5.     On February 7, 2008, the United States District Court for the District of Columbia entered an order pursuant to 28 U.S.C. § 1610(c) finding that a reasonable period of time had elapsed following the entry of the December 2006 Judgment and the giving of notice of the December 2006 Judgment under 28 U.S.C. § 1608(e), and authorizing the Petitioners to pursue attachment in aid of execution of the December 2006 Judgment. *See* Santoro Decl. Ex. 2.

6.     Iran, MOIS, and IRGC were properly served with the September 2009 Judgment on January 18, 2010, pursuant to 28 U.S.C. § 1608(a)(4). Confirmation of service of the September 2009 Judgment was filed with the Clerk of the Court for the U.S. District Court for the District of Columbia on or about April 5, 2010, by William P. Fritzlen, Attorney Adviser, United States Department of State's Office of Policy Review and Interagency Liaison. According to the April 1, 2010 letter from Mr. Fritzlen and as required by § 1608(a)(4), copies of the Memorandum Opinion, Order & Judgment, and Notices of Default Judgment in these actions were transmitted by diplomatic notes and served on the Iranian Ministry of Foreign Affairs on January 18, 2010.

7.     On May 10, 2010, the United States District Court for the District of Columbia entered an order pursuant to 28 U.S.C. § 1610(c) finding that a reasonable period of time had elapsed following the entry of the September 2009 Judgment and the giving of notice of the September 2009 Judgment under 28 U.S.C. § 1608(e), and authorizing the Petitioners to pursue attachment in aid of execution and execution of the September 2009 Judgment. *See* Santoro Decl. Ex. 5.

8.     On September 8, 2008, the Petitioners registered the December 2006 Judgment with this Court pursuant to 28 U.S.C. § 1963, under case number 18-Misc-302, judgment number 08,1562. In addition, on December 8, 2010, the Petitioners registered the September 2009

Judgment with this Court pursuant to 28 U.S.C. § 1963, under case number 10-Misc-0005, judgment number 10,2146. *See* Santoro Decl. Ex. 6.

9. This Court subsequently entered the Heiser 1610(c) Orders in which this Court held, *inter alia*, that the Judgment was properly served on Iran in accordance with 28 U.S.C. § 1608, *et seq.* and a reasonable period of time has elapsed following the entry of the Judgment and the giving of notice required under 28 U.S.C. § 1608(e), thereby satisfying the requirements of 28 U.S.C. § 1610(c). *See* Santoro Decl. Exs. 7-8.

### The Iranian Assets

10. A pending action attempting turnover of the Blocked Assets is *Peterson et al. v. Islamic Republic of Iran, et al.*, Case No. 13-cv-9195 (LAP); on appeal *Peterson v. Islamic Republic of Iran*, Appeal No. 15-690. As alleged by the *Peterson* plaintiffs, JPMorgan maintained a USD correspondent banking account for Clearstream in New York (the "NY Account"). The *Peterson* plaintiffs further allege that between July 8, 2008 and October 15, 2012, the NY Account received 62 bond proceeds payments totaling $1.68 billon. These bond proceeds are Blocked Assets.

11. Bank Markazi is Iran's central bank, and is 100% owned by the government. It is Iran's alter ego. Bank Markazi possesses a beneficial ownership interest in the Blocked Assets.

### ARGUMENT

### PETITIONERS ARE ENTITLED TO AN ORDER
### PERMITTING EXECUTION ON THE SUBJECT PROPERTY

The FSIA permits the attachment and execution of the property of a foreign state in certain circumstances. Sections 1610(a)-(b) authorize attachment and execution when, *inter alia*, the property is (1) located in the United States, (2) used for commercial activity, and (3) controlled by a foreign state or its instrumentalities. *See* 28 U.S.C. § 1610(a)-(b). Moreover,

in 2008, Congress amended the FSIA and enacted a number of reforms, including 28 U.S.C. § 1610(g), intending to benefit victims of state sponsors of terrorism by significantly expanding the number of assets available for attachment in satisfaction of a terrorism judgment entered under 28 U.S.C. § 1605A. *See, e.g.*, *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 62-64 (D.D.C. 2009) (discussing the "broad remedial purpose" of Congress's 2008 amendments and explaining that 28 U.S.C. § 1610(g) "demonstrate[s] that Congress remains focused on eliminating these barriers that have made it nearly impossible for plaintiffs in terrorism cases to enforce civil judgments against Iran or other state-sponsors of terrorism."). Section 1610(g) states, in pertinent part:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state . . . is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section . . .

28 U.S.C. § 1610(g)(1). This section affords holders of judgments obtained pursuant to 28 U.S.C. § 1605A with an additional exception to immunity from attachment and execution that does not limit attachment to property used in "commercial activity" unlike the execution provisions found in § 1610(a)-(b). *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 19 n.8 (D.D.C. 2011). Namely, 28 U.S.C. § 1610(g) removed the commercial activity requirement for holders of 28 U.S.C. § 1605(A) judgments.[3] Similarly, TRIA provides an additional exception to immunity. TRIA provides, in relevant part:

---

[3] Before the enactment of § 1610(g), judgment creditors of foreign states under § 1610(a)-(b) were required to comply with 28 U.S.C. § 1610(c) which provides that:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry

In every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Because of the issuance of the Second Circuit's decision in *Walters v. Indus. & Comm. Bank of China, Ltd.* (which Petitioners believe does not control because it did not deal with executions under § 1610(g) or TRIA), out of an abundance of caution, and without prejudice to the rights established by their prior writs, the Petitioners submit this Application seeking an order (a) confirming that a reasonable period of time has elapsed following the entry of the Judgment and the giving of notice required under 28 U.S.C. § 1608(e) (as set forth in the Heiser 1610(c)

---

of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). In *Walters v. Indus. & Comm. Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011), the Second Circuit discussed the conditions that must be satisfied under 28 U.S.C. § 1610(c), seeking to execute against assets that are not immune by virtue of 28 U.S.C. § 1610(a) or (b):

[T]wo conditions must be met before execution against sovereign property under a default judgment may be effected: (1) "a reasonable period of time" must have elapsed since the judgment was entered and sent to the foreign state pursuant to § 1608(e), and (2) a court must have "ordered such attachment or execution" consistent with subsection (a) or (b) of § 1610.

*Id.* at 288. Under the second prong, the Second Circuit noted that § 1610(c) "requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property." *Id.* at 291. Here, the Petitioners who, unlike the judgment creditors in *Walters*, obtained their Judgment under § 1605A, are executing upon their judgment pursuant to 28 U.S.C. § 1610(g) and TRIA. Therefore, the requirements set forth in § 1610(c) do not apply to them. *See Heiser*, 807 F. Supp. 2d at *19 n.8 (noting that Section 1610(g), therefore, "'removes from the victims the burden of specifying commercial targets … to help them receive justice and recover damages.'" *Id.* (quoting Debra M. Strauss, *Reaching Out to the International Community: Civil Lawsuits as the Common Ground in the Battle against Terrorism*, 19 Duke J. Comp. & Int'l L. 307, 322 (2009)). Even if the requirements do apply, it is clear that the conditions are satisfied with respect to the Blocked Assets.

7

Order), and (b) directing the Clerk to issue writs of execution to enforce the Judgment with respect to the Blocked Assets.

The requirements of 28 U.S.C. § 1610(g) and TRIA are satisfied here. The Blocked Assets have a direct relationship with Iran in that the underlying monies were blocked or restrained due to their nexus with Iran and/or its agencies/instrumentalities. *See* Santoro Decl. Exs. 7-8. The Petitioners hold the Judgment, which was entered pursuant to 28 U.S.C. § 1605A based upon an act of terrorism. Iran has been designated a terrorist party pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), beginning January 19, 1984, and therefore is a "terrorist party" as defined by TRIA § 201(d)(4), 116 Stat. at 2340. *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) (holding that Iran is a "terrorist party" as defined under TRIA § 201(d)(4)). At the time of entry of the Judgment, the United States District Court for the District of Columbia found jurisdiction existed under 28 U.S.C. § 1605(a)(7), and thus Iran was not immune from jurisdiction in the original proceeding. *See Estate of Michael Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 299 (D.D.C. 2006).

Finally, this Court has already issued writs to other judgment creditors of Iran for these same Blocked Assets, as evidenced by the complaints filed in *Peterson v. Islamic Republic of Iran et al.*, Case No. 1:13-cv-09195-LAP and *Levin et al. v. Clearstream Banking S.A. et al.*, Case No. 1:18-cv-12217-LAP.

As noted above in numbered paragraphs 5 and 7, and 9, this Court and the United States District Court for the District of Columbia have already determined that a reasonable period of time had elapsed within the meaning of § 1610(c). *See* Santoro Decl. Exs. 2, 5, 7-8. In addition, this Court has previously held that ten days constitutes a reasonable period of time for purposes of compliance with 28 U.S.C. § 1610(c). *See Elliot Assocs., L.P. v. Banco De La Nacion*, No. 96

Civ. 7916 (RWS), 2000 WL 1449862, at *4 (S.D.N.Y. Sept. 29, 2000). In cases where, as here, courts have found "no evidence that the defendant has taken any steps towards the payment of its debt," six weeks has been found a sufficient period of time to satisfy § 1610(c). *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp.2d 64, 67 (D.D.C. 2001) (finding six weeks would be reasonable time); *see also Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (finding two months reasonable time); *Ferrostaal Metals v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (finding three months was reasonable time and noting that parties had been continuously negotiating).

In this case, as detailed above, service of the December 2006 Judgment and September 2009 Judgment was accomplished years ago. Given these facts, coupled with the prior judicial determinations made on the exact issue by this Court and the United States District Court for the District of Columbia, a "reasonable period" of time has elapsed within the meaning of section 1610(c).

## CONCLUSION

For all the foregoing reasons, Petitioners respectfully request that the Application be granted in all respects.

Respectfully submitted,

Dated: New York, New York
August 6, 2019

DLA Piper LLP (US)

Cary Samowitz
Robert C. Santoro
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: 212-335-4557

9

Facsimile:  212-778-8557
Robert.santoro@dlapiper.com
Cary.samowitz@dlapiper.com

and

Richard M. Kremen
Kristy N. Grace
6225 Smith Ave.
Baltimore, MD 21209
Telephone:  410-580-3000
Facsimile:  410-580-3001
Richard.kremen@dlapiper.com
Kristy.grace@dlapiper.com

*Attorneys for Petitioners Estate of Michael Heiser, et al.*

10

167249488.1